# Union Refining and Storage Co. *versus* Bushnell.

1. An advertisement, that the party advertising is an agent, is but an *ex parte* notice, and is not admissible as proof to establish agency.

2. He who seeks to establish an agency, must not only prove the fact of agency, but the extent of the powers of the agent.

3. Plaintiffs below contracted to deliver to defendant a quantity of oil. Defendant directed the delivery of the oil to H. & Co. Plaintiffs, under order of B. & Co., whom they believed to be the agents of H. & Co., delivered the oil to C. *Held,* that there was no error in submitting the question of fact to the jury whether B. & Co. were the agents of H. & Co., and had authority to direct the delivery to C.

November 7th 1878. Before Agnew, C. J., Sharswood, Mercur, Gordon, Paxson and Trunkey, JJ. Woodward, J., absent.

Error to the Court of Common Pleas, No. 2, of *Allegheny county :* Of October and November Term 1878, No. 204.

This was an action of assumpsit by Daniel Bushnell, for use of Lockhart & Frew, against the Union Refining and Storage Company. The following contract was made, viz. :

"Pittsburgh, July 17th A. D. 1867, bought for account of Union Refining and S. C., from Mr. D. Bushnell, five thousand (5000) barrels crude petroleum in bulk, forty gallons to the barrel, clean merchantable oil, gravity forty to forty-five degrees, to be delivered at landing of Union R. and S. Co., at sellers' option, from September to December inclusive, 1867, to be paid for at the rate of eleven cents per gall., cash, as guaged and delivered.

WARDEN & BATCHELDER, Brokers.

"Joseph Kirkpatrick, President."

In pursuance of this contract, plaintiff delivered to defendant below 4000 barrels. He subsequently tendered the defendants the remaining 1000 barrels, which they refused to receive. At the time of the tender, oil had declined in price, and the 1000 barrels were worth in the market $1600 less than the contract price. This suit was brought to recover this sum and the balance due on the contract. Lockhart & Frew, the equitable plaintiffs, undertook to fulfil the contract for Bushnell,. Defendants had contracted to deliver to McKee, Hackett & Co., between September 1st and

[Union Refining Co. *v.* Bushnell.

Deccember 31st 1867, 5000 barrels. By arrangement, 2000 barrels of the Bushnell oil were delivered to McKee, Hackett & Co., and paid for by defendants below. Subsequently, defendants directed the balance, 3000 barrels, to be delivered to McKee, Hackett & Co., the same as the prior 2000 barrels. Plaintiff went to McKee, Hackett & Co., and did not see them, but saw Brewer, Burke & Co., whom they believed to be the general agents of McKee, Hackett & Co. Brewer, Burke & Co. directed the delivery of the oil, to wit: 2000 barrels to the Stella Works, and 1000 barrels. to the Liberty Oil Works of McKee, Hackett & Co. The 2000 barrels were delivered to the Stella Works, owned by Waring & Co., who, in a settlement with Brewer, Burke & Co., gave them a credit for it. The contention below, was, whether Brewer, Burke & Co. were the agents of McKee, Hackett & Co. To establish this agency, the plaintiffs offered in evidence the following advertisement of Brewer, Burke & Co., published in the Pittsburgh Daily Gazette, viz. :

"BREWER, BURKE & Co.,
Commission Merchants.
Agents for the Pacific, Globe and Liberty Oil Works.
Ample storage for crude and refined oil. Liberal cash advances made on consignments of crude or refined petroleum. Yards for storage and shipment of crude oil at Lawrenceville. .
Office and warehouse, corner of Duquesne way and Hancock street, Pittsburgh."

The admission of this proof, and the submission of the question of agency, and the powers of the agents, to the jury, were assigned for error.

*M. W. Acheson, T. C. Lazear* and *D. W. Bell,* for plaintiff in error.—The advertisement was the act of Brewer, Burke & Co., and was not authorized by McKee, Hackett & Co. It was not admissible to affect defendants: 1 Greenl. Ev., sect. 99; 2 Id., sect. 63. These declarations of an agent, or his acts. as such, are not competent to prove agency: Plumsted *v.* Redebagh, 1 Yeates 502; Clark *v.* Baker, 2 Whart. 343; Grim *v.* Bonnell, 28 P. F. Smith 152; Bringham *v.* Peters, 1 Gray (Mass.) 145. Notice in a newspaper must be brought home to the party to be affected : 1 Whart. Ev., sect. 673–5; Beltzhoover *v.* Blackstock, 3 Watts 20; Kellogg *v.* French, 15 Gray 354; Freno *v.* Freno, 1 W. N. C. 165; Ins. Co. *v.* Johnson, 11 Harris 76.

*Hampton & Dalzell,* and *R. & S. Woods,* for defendant in error. —Agency may be made out as an implication from circumstances, as well as by direct proof. Implied agencies result often out of the relation of employer and employee, husband and wife, parent and

[Union Refining Co. v. Bushnell.]

child, counsel and client, partners, and the less definite relations into which men are brought in the pursuits of business; but in all such cases it is a conclusion of fact to be deduced from circumstances by a jury, rather than assumed by the court: Jordan v. Stewart, 11 Harris 247.

Mr. Justice GORDON delivered the opinion of the court, January 6th 1879.

The advertisement given in evidence by the plaintiff below, against the objection of the defendant, was, at best, but an *ex parte* notice or declaration on part of Brewer, Burke & Co., designed to inform whoever might happen to read it that they were engaged in the oil business as commission merchants, and that they were agents for certain refineries, among which was the Liberty. As there is no proof that McKee, Hackett & Co. ever saw or heard of this advertisement, they could not be affected by it, and it was no more entitled to be received in evidence than any other unauthorized declaration of parties claiming to represent this firm. It follows, that this piece of testimony ought not to have been admitted. What remains is to consider whether this evidence could have had *any* prejudical effect on the defendant's case. Did it tend to establish anything more than was or might have been admitted by the defence without injury to its case? If not, no harm was done, and we cannot reverse for harmless error. The advertisement asserted that these commission merchants were agents for the Liberty Oil Works, but this was not disputed. That they had power to dispose of the products of these works, is proved by McKee, of the firm of McKee, Hackett & Co., a witness for the defendant. He, however, so limits that agency that, without more, it does the plaintiff no good—the powers of it are not sufficiently extensive. It is not merely an agency that will answer the plaintiff's purpose, but an agency embracing extraordinary powers. But upon him is the burden of proof. One seeking to charge another through an agent must not only establish the fact of agency but also the extent of it: Hay v. Lynn, 7 Watts 512; Moore's Ex'rs v. Patterson, 4 Casey 505. Giving, then, the Gazette advertisement all the force possible, and it proves nothing more than was in proof on part of the defence. It may prove an agency of some sort, but it does not define the nature and character of the powers of that agency. One dealing with them on the strength of that publication must do so at his own risk. The advertisement could not, at best, raise a presumption of power exceeding that proved by McKee, that Brewer, Burke & Co., as commission merchants, had the disposition of such portions of the products of the Liberty works as McKee, Hackett & Co. might from time to time consign to them. But what harm could this do to the defendant? Stopping here, the plaintiff had no case. Nay, it was not enough for it to establish

in Brewer, Burke & Co. the powers of a general agency. The defendant might have admitted that and yet have been entirely safe.

McKee, Hackett & Co. were not dealers in crude oil, except to the extent of supplying their own works. They were refiners; their business was to manufacture and sell refined oil, and it was no part of their business to sell, or otherwise dispose of, the crude material. Admitting, then, the powers of these agents to be co-extensive with the business of the firm, it certainly could not exceed that business, for that must limit the power ordinarily found even in a general agency.

We have here, however, these agents undertaking, not merely to dispose of the crude material belonging to their principals, but also, to change the terms of a contract made with those principals. By the contract the oil was to be delivered to McKee, Hackett & Co.; it was in fact delivered to Waring, King & Co., and this on the order of Brewer, Burke & Co., and to apply on their own account, not on that of their principals.

We need hardly say that proof of general agency, as that term is ordinarily understood, would fail to meet a case such as this; it could, in fact, only be met by evidence of extraordinary powers in the agents, or of such conduct on part of the principals as would estop them from calling the act in question. It is, indeed, doubtful whether, excluding the testimony of Frederick Fisher, there was enough in the plaintiff's case to carry it to the jury. It is true, Burke proves that his firm exercised very extensive powers in providing supplies for McKee, Hackett & Co., and in directing the consignment of oil on their contracts, but it is only by supplementing this testimony by that of Fisher, that all doubt about the propriety of the submission of the case is removed. That testimony does, however, remove such doubt. According to his evidence, it would seem as though the business of McKee, Hackett & Co. was almost, if not wholly, controlled and directed by Brewer, Burke & Co. He says he sold a great deal of oil to McKee, Hackett & Co. through Brewer, Burke & Co., and that whilst the contracts were always given to the former firm, he always sold the oil to the latter. He further states that these contracts were frequent, extending over several years; that in 1867 he delivered to Brewer, Burke & Co. some $124,000 worth of oil, one-fourth of which, he thinks, might have been for McKee, Hackett & Co.; that in delivering on these contracts he always dealt with Brewer, Burke & Co., and that they paid him and directed the consignments. He again repeats, that he delivered the oil wherever Burke told him to deliver it; "if the contract was with the Liberty, and he told him to deliver it to the Pacific works, he did so."

That McKee, Hackett & Co. knew of, and sanctioned this assumption of authority by Brewer, Burke & Co., might well be

[Union Refining Co. *v.* Bushnell.]

inferred from the relations existing between these parties. They occupied the same office. McKee was there daily. Goodwin was not only a member of the firm of McKee, Hackett & Co., but book-keeper for Brewer, Burke & Co. It is therefore next to impossible that McKee, Hackett & Co. did not know of the disposition Brewer, Burke & Co. were making of their contracts.

If, however, McKee, Hackett & Co. permitted their agents to exercise such unlimited and almost exclusive control over their business, outside parties might well accept the orders and directions of the agents, though extraordinary in their character, as equivalent to the orders and directions of the principals.

It thus becomes obvious that, under the circumstances above narrated, the error of the court in the admission of the Gazette advertisement, was unimportant, and to reverse on that account would subserve no good purpose.

Judgment affirmed.